IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CITY OF LITTLE ROCK, ARKANSAS**                                              **PLAINTIFF**

v.                                      Case No. 4:23-CV-00831-BSM

**MARQUETTE TRANSPORTATION**
**COMPANY GULF-INLAND, LLC, et al.**                                      **DEFENDANTS**

**PLAINTIFF CITY OF LITTLE ROCK, ARKANSAS'**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE**
**THE REPORT AND TESTIMONY OF MARCOR PLATT, S.E., P.E.**

## I.   INTRODUCTION

Defendants, Marquette Transportation Company Gulf-Inland, LLC (collectively "Marquette") offers the report and anticipated testimony of Marcor Platt, S.E., P.E. ("Platt") concerning the upstream protection cell at the City of Little Rock, Arkansas' ("COLR") Clinton Pedestrian Bridge (the "Bridge"), which was damaged beyond repair as a result of an allision on September 10, 2021 (the "Allision"), due to the negligent actions of Marquette's crew and Marquette. Platt's original core causation, design-capacity, and fault-allocation opinions lack adequate factual foundation, are based on untested and untimely disclosed calculations, rely on materials he did not verify or independently analyze, and extend beyond his stated data and methods.

The Court should exclude his opinions on causation and engineering design opinions relating to a September 10, 2021, barge impact on the damaged beyond-repair Clinton Pedestrian Bridge protection cell in Little Rock, Arkansas. His original February 17, 2026, report ("Original Report") and attached materials reveal critical methodological defects, speculative assumptions, and undisclosed or unsupported calculations rendering his opinions inadmissible.

The COLR also moves to exclude Platt's untimely-disclosed supplemental report ("Supplemental Report") and to preclude any new opinions, bases, and methodologies first disclosed therein. The Supplemental Report was served two and a half weeks after the close of discovery and without agreement between the parties or leave of this Court. Platt introduces new opinions and bases that were not contained in his original expert report, which materially expand his original causation and damages opinions and include rebuttal arguments to an expert report prepared by the COLR's expert, Justin Kestner, P.E. ("Kestner"). Marquette's untimely disclosure violates Federal Rules of Civil Procedure 26(a)(2), 26(e), the Order of this Court, and the appropriate sanction under Rule 37(c)(1) is exclusion.

## II.   LEGAL STANDARD

In determining whether expert testimony should be admitted, the district court must decide if the expert's testimony and methodology are reliable, relevant, and can be applied reasonably to the facts of the case. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court must conduct this initial inquiry as part of its gatekeeping function. *See David E. Watson, P.C. v. United States,* 668 F.3d 1008, 1015 (8th Cir. 2012). The Court must be mindful that "Daubert does not require proof with certainty." *Sorensen By & Through Dunbar v. Shaklee Corp*., 31 F.3d 638, 650 (8th Cir. 1994). Rather, it requires that expert testimony be reliable and relevant. *Id*. "The inquiry as to the reliability and relevance of the testimony is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"

*Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

If a party untimely discloses an expert report, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018).

### III. OPINIONS TO BE OFFERED

Platt's initial assignment was to evaluate the report and calculations of another engineer, Scott Gros, P.E. ("Gros"), and to address whether scour was the primary factor in the Clinton Pedestrian Bridge's protection cell's failure as a result of the September 10, 2021, Allision, and what safety factor against overturning existed. *See* Ex. 1; *see also* Ex. 2, Platt Dep. 175:3-14, 178:2-6, March 6, 2026.[1] Platt states he was asked to evaluate Gros's report regarding the September 10, 2021, barge impact on the subject protection cell, assess whether scour of the overburden following the opening of the McClellan-Kerr Arkansas River Navigation System was the primary factor in the failure, and identify the calculated safety factor against overturning. *Id*.

Marquette retained Platt on the very last day of discovery, the same day expert reports were due, and his report was issued the same day after he spent six hours in total conferring with counsel and preparing the report. *See* Ex. 3, Platt Dep. 27:15-17, 30:15-31:5, 34:22-35:8, March 6, 2026. Platt testified that he was put in a time crunch to prepare his report and verify factual information because he was asked to prepare a report on the same day counsel for Marquette contacted him, the last day of discovery. *See* Ex. 2, Platt Dep. 98:3-12. At his deposition, it was

---

[1] Platt lacks specialized experience in barge impacts on bridge protection structures. *See* Ex. 3, Platt Dep. 12:14-17, 19:11-15.

3

revealed that he did not know the circumstances of the Allision at issue in this litigation, as the factual circumstances were misrepresented to him, and he accepted the information provided to him by counsel at face value. *See* Ex. 2, Platt Dep. 99:16-101:4, 101:13-102:8, 103:4-107:3, 115:18-118:3, 122:9-13; *see also* Ex. 4.

Platt lists his reviewed materials as: Gros's February 16, 2026, expert report; Gros's "Marquette Calc Input-Output"; original 1967 Pier Protective Cells plans; photographs and a sonogram of the site; a vicinity map; and photographs of the damaged tow barge. *See* Ex. 1.[2] Platt includes a brief "Calculated Impact" section that references kinetic energy equations and a Table purporting to compare overturning and resisting moments. He acknowledges several assumptions, including a fully ballasted (filled with loose rock) cell that he characterizes as "conservative," while also stating that ballast would more realistically have been lost over approximately fifty years of service. Platt also scaled an approximate 4.5-foot impact depth from photographs. *Id*. Platt further asserts that the American Association of State Highway and Transportation Officials ("AASHTO") LRFD provisions require a basic barge impact design force and states that his calculated peak force is "approximately" that value. According to Platt, the 2020 AASHTO LRFD provisions require a basic barge impact design force of 1,940 kips, which he claims is approximately equal to his calculated peak force of the impact involved with this matter. *Id*.

Despite acknowledging a lack of information regarding riverbed soil conditions, Platt attributes the failure primarily to scour without even mentioning the barge impact as a cause. *See* Ex. 1. Platt concedes that soil resistance "was not determined due to lack of riverbed soil information," and that additional calculations based on soil technical parameters "would be

---

[2] Platt testified that he did not use Gros's calculations and relied on his own inputs, which contained the same errors as Gros related to the dimensions of the protection cell at issue and its fill. *See* Ex. 2, Platt Dep. 129:6-8; 129:21-130:1, 131:18-132:20, 134:17-136:16, 203:15-19.

4

required" to assess the cell's adequacy in the absence of. *Id*. Additionally, Platt testified that he did not determine how much overburden was lost before the impact and how much was lost as a result of the Allision itself, but conceded that overburden would have been lost as a result of the Allision. *See* Ex. 2, Platt Dep. 110:11-23; 113:7-15.

Two and a half weeks after the discovery deadline and on the eve of Platt's deposition, specifically at 9:04 p.m. EST, Marquette disclosed a new 38-page supplemental/rebuttal report prepared by Platt titled "Supplemental Engineering Report" ("Supplemental Report"). *See* Ex. 5. By that point, Marquette had already had the opportunity to evaluate the COLR's timely disclosed expert reports. Platt's Original Report expressly acknowledged critical data gaps, stating that additional calculations based on riverbed soil technical parameters "would be required" to determine adequacy if scour had not occurred. *See* Ex. 1. The newly disclosed Supplemental Report attempts to fill those gaps by presenting expanded analysis on stability and soil-structure interaction. *See* Ex. 5. Rather than correcting an error, the Supplemental Report introduces new assumptions and new analytical work absent from the Original Report. *Id.*

The Supplemental Report also introduces extensive new hydraulic, scour, and foundation stability analyses not contained in Platt's original February 17, 2026, report. *See* Ex. 5. These additions include discussion of a "Corrected Effective" HEC-RAS model, two-dimensional velocity fields, HEC-18 scour computations, and L-Pile-based stiffness and overturning evaluations, none of which were included in the timely original report *Id.* The Supplemental Report also includes a new "Summary of Conclusions" that includes a multi-part critique of the methods and conclusions of the COLR's expert, Kestner. *Id.* While Marquette would have the Court believe the report is a supplemental report, it functions as a rebuttal report masquerading

5

as a supplemental report in an attempt to rehabilitate Platt's deadline-day prepared Original Report, without any agreement between the parties or leave of the Court to do so.

## IV. ARGUMENT

Marquette's expert, Platt, should be excluded because the opinions contained in his timely original report do not satisfy the requirements of Federal Rule of Evidence 702.[3] His supplemental/rebuttal report should be excluded because it violates the Court's scheduling order. Platt's opinions rely on unsupported attorney-supplied assumptions and insufficient facts or data, and he fails to demonstrate that his methodology is reliable or that it was reliably applied to the facts of this case. As a result, his opinions will not assist the trier of fact. Compounding these deficiencies.

### A. Platt's Opinions Rely on Unsupported Assumptions and Insufficient Facts or Data

Platt's opinions are not based on sufficient facts or data as required by Federal Rule of Evidence 702. Instead, his conclusions rely on unverified assumptions and measurements.

#### i. *Unverified ballast condition.*

Platt's calculations hinge on the protection cell's assumed ballast condition; however, the cell was, in fact, fully grouted (rock riprap with all voids filled with grout to lock the stones together and prevent erosion), not ballasted (stone with voids and no grout) as depicted in the original design drawing, rendering Platt's assumption fundamentally incorrect. *See* Ex. 6; *see also* Ex. 7. He assumes a "fully ballasted" condition that he characterizes as "conservative," while simultaneously suggesting that ballast would have been lost over approximately fifty years of

---

[3] Platt has no design experience with bridge piers, bridge protection cells, bridge dolphins, or bridge fendering systems. *See* Ex. 3, Platt Dep. 24:3-18.

service.[4] Platt provides no data to support his assumption, and there is no evidence that the cell ever contained ballast that could have degraded.

Expert testimony may be excluded if the expert "almost exclusively" relied on speculative estimates and did not perform any independent analysis or verification. *See Meridian Mfg., Inc. v. C & B Mfg.*, Inc., 340 F. Supp. 3d 808, 851 (N.D. Iowa 2018) (citing *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009)); *see also RG Golf Warehouse, Inc. v. Golf Warehouse, LLC,* No. 19-CV-0585 (WMW/DTS), 2022 WL 4017438 (D. Minn. Sept. 2, 2022) (excluded an expert's opinion because his calculations were based on speculative calculations or incorrect factual premises that contradicted the record, finding the opinions unreliable when based on self-serving and speculative sales projections without independent verification). Because Platt's opinions rely on fundamentally incorrect assumptions, they should be excluded.

> ii.   *Impact geometry derived by scaling photographs without methodological support.*

Platt derives an approximately 4.5-foot impact depth by "scaling the photographs," but he does not identify reference dimensions, camera perspective corrections, uncertainty bounds, or any validation through field measurements. Compounding this, Platt's calculations assume a 22-foot diameter protection cell, whereas the subject cell is actually 25.5 feet in diameter, as evidenced by the design drawing. *See* Ex. 6; *see also* Ex. 7. This incorrect assumption materially affects weight distribution, overturning moments, and force calculations. Image-based scaling combined with reliance on the wrong cell size, without documented methodology or validation, does not provide a reliable factual basis for Platt's force and moment calculations.

In *Nooner v. Hobbs*, the Eighth Circuit affirmed the exclusion of expert testimony regarding height calculations derived from surveillance video images. *See Nooner v. Hobbs*, 689

---

[4] Platt testified he believed the cell was not grouted, later conceding the cell was grouted when reviewing the design drawing he had when he prepared his initial report. *See* Ex. 2, Platt Dep. 131:18-132:20, 210:14-211:12, 212:14-19.

7

F.3d 921, 923 (8th Cir. 2012). This case demonstrates that photographic analysis must include verification methods and account for all relevant geometric factors affecting measurements. Courts exclude expert opinions when fundamental assumptions about geometry or measurements contradict the record or lack a proper foundation. *See RG Golf Warehouse, Inc. v. Golf Warehouse, LLC,* No. 19-CV-0585 (WMW/DTS), 2022 WL 4017438 (D. Minn. Sept. 2, 2022). Because Platt's analysis relies on estimates without a reliable methodology and incorrect geometrical assumptions, his opinion should be excluded.

        *iii.*    *Speed, mass, and kinetic energy inputs lack reliable evidentiary support.*

Platt's Table 1 references barge weights, number of barges, total mass, assumed impact speed in knots, and gravitational constants used to compute kinetic energy and impact forces.[5] Yet he provides no citations or supporting evidence establishing the actual vessel configuration, tow mass, or speed at the time of impact.[6] **Platt testified that he calculated the speed based on information provided to him by counsel for Marquette, without verifying that information because he was not provided with documents, and later testified that his math was incorrect.** *See* Ex. 2, Platt Dep. 61:7-12, 62:18-21, 63:5-8, 64:21-5, 66:8-16, 68:18-24, 72:18-22, 76:19-77:5. He did not contest the speed used by the COLR's expert, Justin Kestner, P.E., in his calculations in his expert report, and he was not provided with the documentation Kestner had. *Id.* at 85:18-86:1, 93:9-17, 94:17-95:2. He also testified that he guessed about the weight of the barges using internet websites based on averages. *Id.* at 83:12-21. He also testified that his speed calculations in both of his reports contain a major and impactful mathematical error. Because of this error, Platt determined that the barge's speed was 500 percent lower than the actual speed.

---

[5] Platt testified he did not recall where he got 1,800 tons for his calculations. *See* Ex. 2, Platt Dep. 142:10-13.
[6] Platt testified that he did not know how many of the barges were loaded at the time of the Allision. *See* Ex. 2, Platt Dep. 141:1-3.

He likely made this key mathematical error because he was working on a short deadline to turn around the report the same day Marquette's counsel engaged him. *See* Ex. 2, Platt Dep. 147:12-148:22; 152:2-4; 153:12-24; 164:5-23; 171:1-13; 172:2-10. This, in turn, resulted in Platt's calculation of an impact force that was 500% less than the actual force imposed on the Cell. *Id.* at 164:5-23.

Platt's calculations are incorrect and do not rely on inaccurate data. The *Meridian Mfg., Inc. v. C & B Mfg., Inc.* case illustrates that expert testimony may be excluded when the expert "almost exclusively relied on speculative estimates and did not perform any independent analysis or verification." *See Meridian Mfg., Inc. v. C & B Mfg., Inc.*, 340 F. Supp. 3d 808 (N.D. Iowa 2018) (citing *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009)). Because Platt's force calculations rely on insufficient facts or data, his opinion should be excluded.

Rule 702 requires exclusion where an expert's opinion rests on speculation, incorrect assumptions, or insufficient factual data. Courts routinely exclude engineering and technical testimony when core inputs, such as ballast condition, impact geometry, subsurface conditions, or physical parameters, are unverified or demonstrably incorrect.[7] Because Platt's opinions rely on the wrong composition of the Cell, undocumented image scaling, unsupported scour assumptions, and unsubstantiated kinetic energy inputs, his conclusions are not grounded in

---

[7] In *Lancaster v. BNSF Railway Co.*, the court affirmed exclusion of a causation expert's opinion, holding that "the district court found that Dr. Chiodo's opinion lacked a reliable foundation because it was premised on a misunderstanding of Dr. Zimmerman's expert report." *See Lancaster v. BNSF Ry. Co.*, 75 F.4th 967, 969 (8th Cir. 2023); *see also* Fed. R. Evid. 702 (expert testimony must be "based on sufficient facts or data"). The court further emphasized that "any step that renders the analysis unreliable renders the expert's testimony inadmissible" under *Daubert v. Merrell Dow Pharmaceuticals, Inc. See Lancaster v. BNSF Ry. Co.*, 75 F.4th 967, 971 (8th Cir. 2023). Courts in the Eighth Circuit routinely exclude expert testimony where the expert fails to verify assumptions or relies on unsupported estimates. *See, e.g., Jaurequi v. Carter Manufacturing Co.*, 173 F.3d 1076, 1082 (excluding expert whose opinions were based on unsupported assumptions); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056–57 (expert opinion inadmissible where based on speculative assumptions); and *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (expert testimony must be grounded in reliable methodology and sufficient facts).

sufficient facts or reliable methodology and should be excluded. *See* Ex. 2, Platt Dep. 134:17-136:16.

**B. Platt Fails to Demonstrate that his Methods are Reliable or Were Reliably Applied**

Platt's opinions are also methodologically unreliable because he fails to provide reproducible calculations, applies inapplicable design standards, offers unsupported safety factor conclusions, and admits that critical analyses remain incomplete.

    *i.    Platt Fails to Provide Reproducible Calculations or Disclose Methodology.*

Although Platt references equations for kinetic energy and average/peak impact forces and includes a Table 1 labeled "Calculations of overturning moment versus restraining moment," he does not provide the underlying numeric steps, unit conversions, or sensitivity analyses necessary to replicate the results. The report presents a black-box analysis that precludes assessment of error rates, adherence to accepted engineering practice, or independent verification. *See* Ex. 1. Such *ipse dixit* prevents testing or replication and precludes any meaningful assessment of error rates, reliability, or peer-reviewed support. Courts have consistently held that failure to disclose methodology warrants exclusion of expert testimony.

In *General Electric Co. v. Joiner*, the Supreme Court held that courts are not required to admit expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered." *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Likewise, the Eighth Circuit has rejected expert opinions that amount to unsupported conclusions rather than transparent, testable analysis. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (excluding expert testimony based on speculative assumptions and unverified modeling); *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076 (8th Cir. 1999) (excluding expert whose opinions were based on unsupported assumptions). Because Platt fails to

demonstrate that his methods are reliable or were reliably applied, his opinions should be excluded.

    ii.  *Selective and irrelevant invocation of AASHTO.*

Platt asserts that the impact was equal to the AASHTO basic design force. *See* Ex. 1.[8] Moreover, the AASHTO LRFD provisions he cites were not in effect when the protection cell was originally constructed and are irrelevant to the original design.[9] This *ipse dixit* comparison lacks any reliable application of a recognized engineering standard.[10]

    iii.  *Safety factor opinions unmoored from standards.*

Platt opines that the safety factor against overturning was approximately 15% and "should be at least 3." However, he cites no governing standard for a factor of safety of 3 and discloses no underlying calculations supporting the 15% figure. Such conclusory statements, unsupported by methodology, fail to meet the reliability requirements of Rule 702. *See Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1083 (8th Cir. 1999) (excluding expert whose opinions were based on unsupported assumptions). Because Platt's opinions are unsupported by methodology, they fail to meet the reliability requirements of Rule 702 and should be excluded.

    iv.  *Acknowledged incompleteness undermines methodological reliability.*

Platt concedes that "additional calculations" based on riverbed soil technical parameters are required to determine whether the original protection cell would have been adequate absent scour. This admission confirms that his analysis is incomplete, speculative, and not the product of a fully applied, reliable engineering methodology.[11]

---

[8] Platt testified that he does not know when AASHTO came into existence. *See* Ex. 2, Platt Dep. 214:11-23.
[9] Platt testified that he does not know when AASHTO came into existence. *See* Ex. 2, Platt Dep. 214:11-23.
[10] Platt testified that he did not calculate whether the protection cell would have overturned when it had full overburden. *See* Ex. 2, Platt Dep. 172:23-173:3, 173:15-174:2.
[11] The Eighth Circuit has repeatedly held that speculative expert testimony cannot provide a legally sufficient evidentiary basis. *In J.B. Hunt Transport, Inc. v. General Motors Corp.*, the court explained that "expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis." *J.B. Hunt*

11

Platt's opinions are unreliable because they rely on undisclosed calculations, inapplicable design standards, unsupported safety factor assertions, and admitted methodological gaps. Without a reproducible methodology or verification of assumptions, his conclusions cannot be trusted. For these reasons, Platt's methodological analyses fail under Rule 702 and should be excluded.

### C. Platt's Opinions will Not Assist the Trier of Fact and Risk Confusion

Much of Platt's Original Report is conclusory and consists of uncritical agreement with Gros's opinions, rather than independent, data-driven analysis. Platt asserts that scour was the primary cause of failure and that the safety factor was insufficient, but he provides no transparent, reproducible calculations to support these conclusions. His claim that the Allision impact was equal to the AASHTO basic design force rests on assumed inputs, including a 22-foot cell rather than the actual 25.5-foot cell and a ballasted condition when the cell was fully grouted, as per the design drawing, rather than verified vessel parameters, speed, impact angle, or hydrodynamics.[12] Treating Platt's conclusions as if the Allisons' impact exactly matched a design-force requirement or as proof of causation is speculative, unsupported, and likely to mislead the Court.

Platt's opinions are unreliable, unsubstantiated, speculative,[13] and will not aid the trier of fact because they are merely conclusory agreements with Gros. They are based on incorrect

---

*Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.) (internal quotations omitted), *cert. denied*, 531 U.S. 979, 121 S.Ct. 428, 148 L.Ed.2d 436 (2000). Likewise, the Eighth Circuit has emphasized that a district court's gatekeeping role is "to discern expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge." *Ackerman v. U-Park, Inc*., 951 F.3d 929, 933 (8th Cir. 2020).

[12] Critically, Gros testified that his own calculations contained these same errors and that he did not rely on them in forming his opinion, instead basing his conclusions on direct observation. *See* Ex. 8, Gros Dep. 67:6-68:8, March 3, 2026.

[13] *See J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) ("expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.) (internal quotations omitted), *cert. denied*, 531 U.S. 979, 121 S.Ct. 428, 148 L.Ed.2d 436 (2000).

assumptions and unverified inputs, and merely echo Gros's conclusions without independent analysis. An "'[E]xpert [may] base an opinion on facts or data not admissible in evidence if it is of the type reasonably relied upon by experts in that particular field,' experts are not permitted to 'simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon.'" *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 932 (D. Minn. 2020) (quoting *In re Polypropylene Carpet Antitrust Litig*., 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000). Here, Platt does just that, and he adopts the findings of Gros based on inaccurate and fundamentally flawed calculations to echo Gros's proffered expert opinion without verifying any of Gros's assumptions or inputs to determine whether Gros's opinions are reliable. For these reasons, Platt's testimony should be excluded under Rule 702.

## D. Platt's Supplemental Report Was Disclosed After the Discovery Deadline Without Agreement or Leave of this Court, and Improperly Adds New Opinions

Platt's supplemental report was served after the Court's discovery deadline of February 17, 2026 (ECF No. 48) and introduces entirely new opinions, analyses, and critiques that far exceed the permissible scope of Rule 26(e). *See* Ex. 3, Platt Dep. 4:5–5:18; 9:2–10:6. Rather than merely correcting or updating his Original Report, Platt introduces analyses that materially expand his causation and damages opinions. This untimely disclosure violates Rules 26(a)(2) and 26(e), and the appropriate sanction under Rule 37(c)(1) is exclusion.

### i. The Supplemental Report is not a proper supplement under Rule 26.

Rule 26(e) supplementation is limited to correcting inaccuracies or providing information that was not previously available. Rule 26(e) does not give a party a license to cure omissions or advance new theories after discovery has closed. Here, Platt's Supplemental Report introduces substantial new hydraulic, scour, and foundation stability analyses, including a "Corrected Effective" HEC-RAS model, 2D velocity fields, HEC-18 scour computations, L-Pile-based

stiffness and overturning evaluations, a new "Summary of Conclusions," and a multi-part critique of the COLR's expert, Kestner, none of which were disclosed in the Original Report. These opinions and analyses cannot reasonably be characterized as mere corrections. Platt's Supplemental Report post-dates the discovery cutoff by over two weeks, and it is important to note that Platt's Original Report bears the same date as his retention, showing that Marquette elected to retain and disclose him on the last day of discovery. Having chosen the last day to retain and disclose its expert, Marquette cannot use Rule 26(e) to extend expert discovery or to deliver a second, expanded expert disclosure after the cutoff. The Supplemental Report is therefore untimely and improper.[14]

The supplemental report is not a proper supplement under Rule 26(e) because it is a substantial expansion in scope, materials, and opinions. *See* Fed. R. Civ. P. 26(e). Platt relies on multiple new materials obtained after his Original Report, including the February 17, 2026, report of the COLR's expert Kestner, in what is clearly an attempt to cloak a rebuttal report as a supplemental disclosure. *See* Ex. 5. The new analyses, the "Summary of Conclusions," and the multi-part critique of Kestner were never disclosed in the Original Report and fall outside the permissible scope of supplementation. *Id.*[15] Because Platt's Supplemental Report is not a proper supplement under Rule 26(e), it should be excluded.

---

[14] In *In re Baycol Products Litigation*, the court affirmed exclusion of a supplemental expert report served after the court-imposed deadline, noting that the failure to disclose was not substantially justified where "there (wa)s nothing in the record to indicate that (the expert) could not have reviewed (the) records in detail at the time of his initial report." *See* In re Baycol Prods. Litig., 596 F.3d 884, 888 (8th Cir. 2010). Similarly, in *Cantrell v. Coloplast Corp.*, the court held that a supplemental expert declaration served after the scheduling-order deadline and closure of discovery was untimely and not harmless. The court emphasized that when a district court sets specific deadlines in its scheduling order, those deadlines supersede default discovery rules. *See Cantrell v. Coloplast Corp.,* 76 F.4th 1113 (8th Cir. 2023).

[15] *See Hein v. Deere & Co.*, No. C11-0113, 2013 WL 3816699, at *7 (N.D. Iowa July 22, 2013) (citing *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 433 (N . D.Okla.2008); *Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M.2003) (same); *see also Keener v. United States*, 181 F.R.D. 639, 640 (D.Mont.1998) ("Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.").

>    ii.    *Exclusion is the proper sanction under Rule 37(c)(1).*

Exclusion is the proper sanction under Rule 37(c)(1). Courts within the Eighth Circuit apply a four-factor test when determining whether to exclude untimely expert testimony: (1) the importance of the testimony; (2) the explanation for the failure to disclose; (3) the prejudice created by allowing the testimony; and (4) the ability to cure the prejudice through a continuance. *See Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043 (2010). Here, all factors favor exclusion. The supplemental opinions derive their importance from Marquette's untimely attempt to introduce new analyses. Marquette has offered no legitimate justification for the delay, and the disclosure is highly prejudicial to the COLR, whose experts had no opportunity to review or respond to Marquette's expert reports, because the COLR chose to honor the Court's scheduling order. Reopening discovery to address the new opinions would disrupt the case schedule, require additional depositions and expert work, and delay the trial, which is currently scheduled for the first week of June. *See* ECF No. 48; *see also Meyer v. Currie Tech. Corp.*, 329 F.R.D. 228 (2018) (excluding untimely supplemental rebuttal report). Because the disclosure is neither substantially justified nor harmless, exclusion under Rule 37(c)(1) is warranted.

>    iii.    *Platt's Supplemental Opinions also fail under Rules 702 and 403.*

The supplemental opinions also fail under Rules 702 and 403. The Court's gatekeeping role requires that expert testimony be reliably grounded and that opposing parties have a fair opportunity to evaluate the methodology. Rule 403 further supports exclusion because expert testimony can be highly persuasive yet difficult for a jury to evaluate. As the court observed in *Moe v. Grinnell College*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *See Moe v. Grinnell Coll.*, 547 F. Supp. 3d 841, 845 (S.D. Iowa 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 595, 113 S. Ct. 2786, 2798,

125 L. Ed. 2d 469 (1993). When expert testimony risks confusing the issues or misleading the jury, exclusion is appropriate if its probative value is substantially outweighed by the danger of prejudice, confusion of the issues, or undue delay. Admitting Platt's late supplemental opinions would inject new opinions at the eleventh hour, creating a risk of jury confusion, prejudice, and delay that substantially outweighs any probative value. Accordingly, the supplemental report should be excluded.

Platt's supplemental report introduces entirely new opinions, analyses, and critiques well after the discovery deadline, exceeding the permissible scope of Rule 26(e) supplementation. The untimely disclosure is highly prejudicial, cannot be cured without disrupting the case schedule, and fails to meet the reliability requirements of Rules 702 and 403. For these reasons, the supplemental report and all new opinions, methodologies, and analyses it contains should be excluded under Rules 26(e), 37(c)(1), 702, and 403.[16]

## V.   CONCLUSION

For all of the foregoing reasons, Platt's opinions should be excluded in their entirety. They are based on unverified assumptions, incomplete or undisclosed calculations, speculative equivalences, reliance on factual misrepresentations from Marquette's counsel, another expert's conclusions without independent analysis, and untimely supplemental opinions introduced after the discovery deadline. Allowing these opinions would be highly prejudicial, risk misleading the Court and the jury, and would undermine the reliability and fairness standards required under Rules 26(e), 37(c)(1), 702, and 403. Accordingly, the Court should exclude all of Platt's

---

[16] Courts frequently exclude supplemental reports that introduce new analyses after the disclosure deadline. In *Meyer v. Currie Technologies Corp.*, the court excluded an expert's supplemental rebuttal report disclosed nearly six weeks after the deadline, finding the party failed to justify the delay and allowing the report would disrupt the case schedule. *See Meyer v. Currie Tech Corp.*, 329 F.R.D. 228, 233 (D. Neb. 2018).

testimony, analyses, and supplemental opinions. In the alternative, the Court should strike all portions of the March 5, 2026, Supplemental Report that proffer new opinions, bases, analyses, or materials not fairly disclosed in Platt's original February 17, 2026, report.

          **COHEN & FREY P.C.**

By: /s/ Jeffrey D. Cohen
     Jeffrey D. Cohen
     Matthew J. Tinnelly (*pro hac vice*)
     The Times Building
     32 Parking Plaza, Suite 402
     Ardmore, PA 19003
     Phone: (215) 609-1110
     Fax: (215) 609-1117
     Email: Jcohen@freightlaw.net
     Email: Mtinnelly@freightlaw.net

Date: March 16, 2026

*Attorneys for Plaintiff,*
*City of Little Rock, Arkansas*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026 a copy of the City of Little Rock, Arkansas' Memorandum of Law in Support of its Motion to Exclude the Report and Testimony of Marcor Platt, S.E., P.E., was served on the following counsel of record through the Court's CM/ECF System:

Steven W. Quattlebaum, Ark. Bar No. 84127
Thomas H. Wyatt, Ark. Bar No. 2013273
**QUATTLEBAUM, GROOMS & TULL PLLC**
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
quattlebaum@qgtlaw.com
twyatt@qgtlaw.com

John A. Scialdone, Esq.
Katherine Halliday, Esq.
**SCIALDONE LAW FIRM, PLLC**
1319 24th Avenue
Gulfport, MS 39501
Telephone: (228) 822-9340
Facsimile: (228) 822-9343
jscialdone@slfirmus.com
khalliday@slfirmus.com

*Attorneys for Defendants*

Date: March 16, 2026                              By:     /s/ Jeffrey D. Cohen
                                                          Jeffrey D. Cohen