IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CITY OF LITTLE ROCK, ARKANSAS                                            PLAINTIFF

v.                                  Case No. 4:23-CV-00831-BSM

MARQUETTE TRANSPORTATION
COMPANY GULF-INLAND, LLC, et al.                                        DEFENDANTS

PLAINTIFF CITY OF LITTLE ROCK, ARKANSAS'
TRIAL BRIEF

Pursuant to the Court's scheduling order (ECF No. 48), Plaintiff, City of Little Rock, Arkansas ("COLR"), by and through its undersigned attorneys, submits this Trial Brief in advance of the bench trial.

I.    INTRODUCTION

This case arises from the loss of control of a vessel and tow on the Arkansas River on the night of September 10, 2021, resulting in successive allisions. Defendants, Marquette Transportation Company Gulf-Inland, LLC, et al. ("Marquette"), owned and operated the M/V Kieffer E. Bailey (the "Vessel") while pushing a tow of eleven barges, ten of which were fully loaded with wheat (the "Tow"), through a series of six bridges in close proximity, including the Interstate 30 bridge and the Clinton Pedestrian Bridge. During that transit, Marquette failed to maintain control of the Vessel and the Tow, resulting in an allision with the Interstate 30 bridge protection cell that caused the Tow to break free. The uncontrolled Tow then traveled downriver and allided with the protection cell of the Clinton Pedestrian Bridge owned by the COLR, displacing and destroying the structure beyond repair and rendering it a total loss (the "Allision").

This is a case governed by maritime law. When a moving vessel allides with a stationary structure, a presumption of negligence applies under *The Oregon Rule*, and the burden shifts to the

1

vessel to rebut that presumption. The evidence will establish that Marquette cannot rebut that presumption on any recognized ground. The evidence will establish that the Allision and resulting damage were caused by failures in navigation, vessel handling, and operational control, including deficiencies in training, supervision, staffing the Vessel with a competent crew, and preparation for transit through a known constrained navigation area. The evidence will further establish that these acts and conditions were within Marquette's knowledge or privity, and that Marquette is not entitled to limitation of liability.

The Court must determine whether Marquette was negligent in the operation and management of the Vessel and Tow, whether that conduct caused the initial allision, the breakaway, and the subsequent destruction of the Clinton Pedestrian Bridge protection cell, whether the acts or conditions causing the Allision occurred within Marquette's knowledge or privity, and the proper measure and scope of damages. The evidence will establish that the Allision rendered the protection cell a total loss requiring demolition, removal, engineering, and replacement work necessary to restore the structure's intended protective function. The evidence will further establish that the COLR evaluated replacement alternatives, undertook reasonable mitigation efforts, and incurred reasonable and necessary costs to restore protection for the Bridge and navigation safety. The Court must also resolve related maritime damages issues, including betterment, depreciation, mitigation, and prejudgment interest.

## II.     STATEMENT OF FACTS

On the night of September 10, 2021, the Vessel was pushing the Tow on the Arkansas River near Little Rock, Arkansas. The Vessel and the Tow transited a series of six bridges in close proximity, including the Interstate 30 bridge and the Clinton Pedestrian Bridge (ECF Nos. 58-26; 58-19). As the Vessel approached and entered the Interstate 30 bridge opening, the Tow was not

properly aligned. The Vessel and the Tow allided with the upriver protection cell of the Interstate 30 bridge (ECF Nos. 58-26; 58-19). The impact caused the Tow to break free from the Vessel. Once separated, the Tow ran downriver, where it allided with the upriver protection cell of the Clinton Pedestrian Bridge owned by the COLR (ECF Nos. 58-26; 58-19). This sequence, from the initial allision to the breakaway to the downstream impact, is reflected in Marquette's incident reporting (ECF Nos. 58-26; 58-19). The downstream impact displaced and destroyed the Clinton Pedestrian Bridge protection cell. Before the Allision, the structure was upright and performing its intended protective function (ECF Nos. 75-1 at 77:21-24; 58-38 at 27 of 54). After the Allision, the protection cell was rendered beyond repair, and the United States Coast Guard required its removal and replacement (ECF No. 58-2).

At the time of the Allision, the Vessel was being operated by personnel with no prior experience navigating the Arkansas River. Captain Anthony Treadwell ("Treadwell") and pilot Patreon Hopkins ("Hopkins") were each navigating this river for the first time (ECF Nos. 58-19; 58-35). Hopkins was operating the Vessel at the time of the initial allision. It was his third day working for Marquette, and he had not previously stood a watch alone before the night of the Allision (ECF Nos. 58-19; 58-35). He was navigating at night through successive bridge openings while pushing the Tow, which was larger than any tow he had previously handled (ECF Nos. 58-35; 58-3 at 209:6–11).

Although Marquette assigned a navigational assessor, Brian Lowrance ("Lowrance"), to evaluate Hopkins, Lowrance was not supervising or assessing at the time of the Allision because he was asleep during the transit (ECF Nos. 58-19, 58-21). Marquette had no written policies governing the role of a navigational assessor, did not require documented navigational assessments for new hires, and did not verify Hopkins's prior route experience before assigning him to operate

the Vessel (ECF No. 58-3 at 137:9–13, 161:20–162:1, 91:21–92:13). Marquette also did not conduct a safety meeting addressing known bridge restrictions before the transit and did not document a voyage risk assessment (ECF Nos. 58-5–58-8, 58-16, 58-3 at 339:4–10).

There is no evidence that the Clinton Pedestrian Bridge protection cell presented any hazard or defect before the Allision. Marquette's corporate representative testified that the structure had not been reported as an obstruction to navigation (ECF No. 75-2 at 177:24-178:10). Engineering and City records likewise reflect no prior reports of misalignment or structural deficiency (ECF No. 75-4).

After the Allision, the COLR retained HNTB to evaluate the damaged protection cell, assess replacement alternatives, and develop engineering and design solutions necessary to restore the protection cell's protective function. The COLR also retained Massman Construction to evaluate constructability, demolition, and replacement alternatives and to remove and replace the damaged protection cell (ECF Nos. 58-36; 75-1 at 81:21–82:24; 75-6). The evidence will establish that the COLR evaluated alternatives and undertook reasonable efforts to mitigate costs while restoring the protection cell's intended protective function.

## III.   APPLICABLE LAW

### A. Maritime Negligence

This action arises under general maritime law. A vessel owner and operator owes a duty to exercise reasonable care in the navigation, operation, and management of its vessel and tow. That duty includes ensuring that the vessel is properly staffed with competent personnel, that those personnel are adequately trained and supervised, and that the vessel is properly prepared for the voyage undertaken. Failures in hiring, vetting, training, supervision, and voyage preparation may constitute negligence where they result in loss of control of a vessel or tow, and in an ensuing

allision. Where a vessel is operated by inexperienced personnel without adequate oversight or preparation, and that operation results in an allision, liability follows under settled maritime principles.

### B. *The Oregon Rule*

When a moving vessel allides with a stationary object, a well-established maritime presumption of fault applies under *The Oregon Rule*. This presumption applies where, as here, a vessel or its tow allides with a fixed structure. Once the presumption applies, the burden shifts to the vessel to rebut it by demonstrating that it was without fault, that any fault did not cause the allision, that the stationary object caused the allision, or that the allision was the result of an inevitable accident.

### C. Causation – Substantial Factor

Under maritime law, negligence is actionable where it is a substantial factor in causing the plaintiff's injury. A defendant's conduct need not be the sole cause of the harm. A defendant's conduct is sufficient if it materially contributed to the damage. Where a vessel's negligence results in a loss of control of a vessel or tow, and that loss of control leads to successive impacts, the resulting damage is treated as part of a continuous and unbroken chain of causation. Liability is not avoided merely because the damage occurs after an initial impact or involves multiple stages. A defendant cannot defeat causation by pointing to speculative alternative causes or preexisting conditions where the evidence establishes that the allision was a substantial factor in producing the loss. Even where other conditions may have existed, they do not relieve the defendant of liability unless they constitute a superseding cause that independently produced the damage.

### D. Inevitable Accident

A vessel may attempt to avoid liability by asserting that the allision was caused or the result of an inevitable accident. To prevail on that defense, the vessel must demonstrate that the allision could not have been prevented by the exercise of reasonable care, caution, and/or maritime skill. This is a heavy burden. The defense is not available where the allision results from navigational error, loss of control, inadequate staffing, deficient supervision, or failures in preparation. Where human error or operational deficiencies contribute to the incident, the defense is inapplicable.

### E. Limitation of Liability – Knowledge or Privity

Under the Limitation of Liability Act, a vessel owner may limit its liability only if it proves that the acts or conditions causing the loss occurred without its knowledge or privity. The burden rests with the vessel owner. "Knowledge or privity" includes both actual knowledge and constructive knowledge, what the vessel owner knew or should have known through the exercise of reasonable diligence. Acts and omissions relating to hiring, vetting, training, staffing, supervision, and voyage preparation are attributable to the vessel owner and fall within its knowledge or privity. Where a loss results from the placement of an inexperienced crew, the absence of proper supervision, or failures in operational policies and procedures, those conditions are within the vessel owner's knowledge or privity and preclude the vessel owner from limiting its liability.

### F. Measure of Damages

Under maritime law, the proper measure of damages for injury to or destruction of a structure is the necessary reasonable cost to restore the structure to its prior functional condition. Where a structure serves an integral protective function and is damaged beyond repair, the plaintiff may recover the reasonable costs of demolition, removal, engineering, and replacement necessary

to restore that function. Replacement of the protection cell does not constitute a betterment or windfall because the replacement merely restores the protection the Bridge had before the Allision. Principles such as betterment or depreciation do not bar recovery where replacement is required to restore the structure's intended protective function. Likewise, demolition and removal costs necessary to effect restoration are recoverable and are not subject to depreciation.

### G. Prejudgment Interest

To fully compensate the injured party, prejudgment interest is ordinarily awarded in maritime cases. It is the rule rather than the exception and is denied only in extraordinary circumstances. Where damages arise from a maritime allision, an award of prejudgment interest is appropriate.

## IV.    ARGUMENT

### A. Marquette's Liability is Subject to Application of *The Oregon Rule*

The Tow struck two stationary structures, the Interstate 30 bridge protection cell and the Clinton Pedestrian Bridge protection cell. These facts trigger the well-established presumption of fault under *The Oregon Rule*. *See The Oregon,* 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L.Ed. 943 (1895). Once the presumption applies, the burden shifts to Marquette to demonstrate that it was without fault, that any fault did not cause the Allision, that the stationary structures were at fault, or that the Allision was the result of an inevitable accident.

There is no evidence that either stationary structure was at fault. The record establishes that the protection cells were not obstructions or hazards to navigation and were performing their intended protective function. Marquette likewise cannot establish that it acted without fault. The evidence shows that the Tow was not properly aligned during transit and that Marquette failed to maintain control of the Vessel and the Tow. That failure was not an isolated navigational error, but

7

the direct result of Marquette's staffing, supervision, and preparation decisions. Marquette placed an inexperienced pilot, Hopkins, who had no prior experience on the Arkansas River, had never stood a watch alone, and had never handled a tow of more than six barges, in control of the Vessel during a nighttime transit through successive bridge openings. The captain, Treadwell, was likewise on his first transit on the Arkansas River. Marquette failed to verify Hopkins's qualifications, conduct basic vetting and route familiarization, and ensure that the Vessel was staffed with qualified and competent personnel. Although Marquette assigned a navigational assessor, Lowrance, that safeguard was illusory because Lowrance was not supervising or assessing at the time of the Allision since he was asleep. Marquette also failed to conduct a safety meeting or prepare a voyage risk assessment despite the known navigation conditions. Nor can Marquette establish that the Allision was unavoidable. River conditions were normal, the current was slack, and the transit was routine. The Allision was avoidable and resulted from these operational failures, not uncontrollable conditions.

The evidence will establish that Marquette has not rebutted the presumption under *The Oregon Rule* on any recognized ground. The evidence presented at trial will establish Marquette's liability for the Allision. The evidence will also establish that the Allision resulted from Marquette's failure to maintain control of the Vessel and the Tow, which in turn resulted from deficiencies in staffing, vetting, supervision, and voyage preparation within Marquette's knowledge or privity. Judgment on liability should therefore be entered in favor of the COLR.

**B. Marquette's Negligence Was a Substantial Factor in Causing the Allision**

The record independently establishes that Marquette's negligence was a substantial factor in causing the Allision. Marquette placed an inexperienced pilot, Hopkins, in control of the Vessel during a nighttime transit through six closely spaced bridges while pushing the Tow, which was

more than twice the size of any tow he had previously handled. Hopkins had no prior experience navigating the Arkansas River, had never stood a watch alone, and had been employed by Marquette for only days at the time of the Allision (ECF Nos. 58-19; 58-35).

Marquette also failed to provide adequate supervision. The navigational assessor assigned to evaluate Hopkins was asleep at the time of the Allision, eliminating the very safeguard Marquette purported to implement. Marquette also had no policies or procedures governing the role or responsibilities of navigational assessors and did not require documented navigational assessments for new hires (ECF No. 58-3 at 137:9–13, 161:20–162:1).

Marquette further failed to perform basic hiring and vetting. There is no documentation that Marquette verified Hopkins's prior experience, confirmed his qualifications, or ensured that he was capable of safely performing the assigned transit (ECF Nos. 58-3 at 209:25-211:2; 58-16). These failures were compounded by deficiencies in Marquette's voyage preparation, including the absence of a safety meeting addressing known bridge conditions and the failure to conduct a documented voyage risk assessment (ECF Nos. 58-5–58-8; 58-16; 58-3 at 339:4–10).

These combined failures resulted in the loss of control of the Vessel and the Tow. The Tow was not properly aligned, control was lost, and the Allision occurred. Under maritime law, these facts establish that Marquette's conduct was a substantial factor in causing the Allision and resulting damage.

### C. Marquette's Attempts to Avoid Causation Fail

Marquette's attempts to avoid liability by pointing to alleged preexisting conditions or alternative causes are unsupported by the evidence and do not defeat causation under maritime law. The record establishes that the Clinton Pedestrian Bridge protection cell was functioning

before the Allision and was displaced and destroyed after being struck by the Tow (ECF Nos. 75-1 at 77:21-24; 58-38 at 27 of 54).

Even if other conditions existed, they would not defeat causation. Maritime law requires only that Marquette's negligence be a substantial factor in causing the damage. It need not be the sole cause. *See Am. S.S. Co. v. Hallett Dock Co.,* 862 F. Supp. 2d 919, 944 (D. Minn. 2012) (citing *Osborne v. Twin Town Bowl, Inc.,* 749 N.W.2d 367, 376 (Minn. 2008)). Marquette offers no evidence that any alleged condition independently caused the destruction of the protection cell or constituted a superseding cause. Instead, the record reflects a direct and continuous chain of events, from the loss of control of the Vessel and the Tow to the downstream destruction of the Clinton Pedestrian Bridge's protection cell.

Marquette's causation arguments do not defeat liability. The evidence establishes a direct and continuous chain of events from Marquette's loss of control of the Vessel and the Tow to the destruction of the Clinton Pedestrian Bridge protection cell. That loss of control resulted from Marquette's failures in staffing, training, supervision, and voyage preparation, deficiencies that were within Marquette's knowledge or privity. Marquette's negligence was a substantial factor in causing the damage, and no intervening or superseding cause breaks that causal chain. Accordingly, Marquette remains liable for the full extent of the resulting loss.

### D. Marquette Is Not Entitled to a Limitation of Liability

Marquette bears the burden of establishing that the acts or conditions causing the Allision occurred without its knowledge or privity. Marquette has not met its burden. The record establishes that Marquette's management was responsible for staffing the Vessel and determining whether a navigational assessor was required. The decision to place Hopkins in control of the Vessel, despite his lack of experience, was a management decision. Marquette's failures in hiring, vetting, training,

supervision, and voyage preparation were systemic and attributable to management. Marquette had no policies governing navigational assessors, did not require documented assessments for new hires, and failed to ensure that its assigned assessor, Lowrance, was performing his duties. Marquette also failed to conduct basic pre-voyage preparation despite known navigation conditions (ECF Nos. 58-3 at 339:4-10, 339:22-340:3). These acts and omissions were within Marquette's knowledge or privity, as they were conditions that Marquette knew or should have known through the exercise of reasonable diligence.

These conditions were attributable to Marquette's management and were not isolated acts of crew negligence. Because the Allision resulted from conditions within Marquette's knowledge or privity, limitation of liability is unavailable. The record establishes that the loss was caused by deficiencies in staffing, training, supervision, and voyage preparation attributable to Marquette's management. These are not isolated acts in the wheelhouse, but systemic failures within Marquette's control. Limitation of liability is therefore precluded.

**E.  The COLR Is Entitled to Recover the Full Measure of Its Damages**

The Allision rendered the Clinton Pedestrian Bridge protection cell a total loss, requiring removal and replacement. Before the Allision, the protection cell was upright, intact, and performing its intended protective function. After the Allision, the structure could not be repaired in place and required demolition, removal, and replacement to restore its protective function.

Under maritime law, the COLR is entitled to recover the reasonable costs necessary to restore the structure's protective function, including demolition, removal, engineering, and replacement costs. The protection cell served an integral protective function for the Bridge and existed solely to protect the Bridge from vessel impacts. Replacement restores the structure's

intended protective function and does not constitute an impermissible betterment or windfall, as it does not increase the Bridge's value.

After the Allision, the COLR retained HNTB and Massman Construction to evaluate replacement alternatives, assess constructability, and develop engineering and replacement solutions necessary to restore the protection cell's protective function. The evidence will establish that the COLR evaluated alternatives and undertook reasonable efforts to mitigate costs while restoring protection for the Bridge and navigation safety. Marquette cannot reduce damages through speculative assertions regarding alleged preexisting conditions or by attempting to isolate portions of the loss. Maritime law does not permit a tortfeasor to avoid liability merely because conditions may have existed before the Allision, where the Allision was a substantial factor in causing the destruction requiring removal and replacement.

Removal costs necessary to restore the structure's protective function are recoverable and are not subject to depreciation. Notably, Marquette's own expert acknowledged that the removal and replacement costs the COLR seeks to recover fall within a reasonable range (ECF No. 58-41 at 206:20–208:17, 209:17–210:19). The evidence will establish that the claimed damages are reasonable and necessary.

## F. The COLR Is Entitled to Prejudgment Interest

Prejudgment interest is routinely awarded in maritime cases to compensate the injured party. There are no exceptional circumstances that would justify denying such an award here. Accordingly, the COLR is entitled to recover prejudgment interest as part of its damages.

## G. CONCLUSION

The evidence will establish that Marquette is liable for the Allision. The evidence triggers the presumption of fault under *The Oregon Rule*, which Marquette has not rebutted on any recognized ground. Independent of that presumption, the record demonstrates that Marquette's negligence was a substantial factor in causing the Allision and the resulting destruction of the Clinton Pedestrian Bridge's protection cell.

The Allision was not the result of unavoidable conditions, but of Marquette's own failures in staffing, training, supervision, and voyage preparation. Those failures were not isolated acts in the wheelhouse, but conditions within Marquette's knowledge or privity. Accordingly, Marquette is not entitled to a limitation of liability. The evidence further establishes that the Allision rendered the protection cell a total loss requiring removal and replacement. Under maritime law, the COLR is entitled to recover the reasonable costs necessary to restore the structure's protective function, including demolition, removal, and replacement. Marquette cannot reduce these damages through speculative assertions of preexisting conditions or by attempting to isolate portions of the loss. The record confirms that the claimed damages are reasonable and necessary.

Accordingly, the COLR respectfully requests that the Court enter judgment in its favor, award the damages reasonably necessary to remove, replace, and restore the protection cell and its protective function, and award prejudgment interest as part of the damages required to compensate the COLR. Judgment should be entered in favor of the COLR.

Respectfully submitted,

**COHEN & FREY P.C.**


By:    /s/ Jeffrey D. Cohen
       Jeffrey D. Cohen
       Matthew J. Tinnelly (*pro hac vice*)
       The Times Building
       32 Parking Plaza, Suite 402
       Ardmore, PA 19003
       Telephone: (215) 609-1110
       Facsimile: (215) 609-1117
       Jcohen@freightlaw.net
       Mtinnelly@freightlaw.net

       *Attorneys for Plaintiff*
       *City of Little Rock, Arkansas*

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 11, 2026 a true and correct copy of the City of Little Rock,

Arkansas' Trial Brief was served on the following counsel of record through the Court's CM/ECF

System:

Steven W. Quattlebaum, Ark. Bar No. 84127
Thomas H. Wyatt, Ark. Bar No. 2013273
**QUATTLEBAUM, GROOMS & TULL PLLC**
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
quattlebaum@qgtlaw.com
twyatt@qgtlaw.com

John A. Scialdone, Esq.
Katherine Halliday, Esq.
**SCIALDONE LAW FIRM, PLLC**
1319 24th Avenue
Gulfport, MS 39501
Telephone: (228) 822-9340
Facsimile: (228) 822-9343
jscialdone@slfirmus.com
khalliday@slfirmus.com

*Attorneys for Defendants*

Date: May 11, 2026                    By:    /s/ Jeffrey D. Cohen
                                              Jeffrey D. Cohen

15