**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CITY OF LITTLE ROCK, ARKANSAS**                                  **PLAINTIFF**

**v.**                              **CASE NO. 4:23-CV-00831-BSM**

**MARQUETTE TRANSPORTATION**
**COMPANY, GULF-INLAND, LLC.**                                      **DEFENDANT**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A tow of barges owned by Marquette Transportation Company allided with one of the Clinton Pedestrian Bridge's protection cells and caused the cell to tip over and lean against one of the bridge's piers. *See* Joint Stipulation of Facts, Doc. No. 111. An allision occurs when a moving vessel strikes a stationary object. Although Marquette concedes that it is liable for its barge striking the protection cell, it denies that this caused the physical damage to the cell that the City claims it caused. Doc. No. 110. Marquette's position is that years of erosion of the earth around the base of the protection cell caused it to be less able to withstand the impact its barge had on the cell. Df.'s Exs. 93 and 95. For this reason, and for others addressed below, it contests most of the economic damages the City claims. Having considered the entire record, including the evidence and very well-made arguments of plaintiff's and defendant's counsel during the three-day trial, judgment is entered for the City of Little Rock and Marquette is ordered to pay damages to it in the amount of $4,364,618.

### I. CONCLUSIONS OF LAW

The general rule for calculating damages in admiralty cases is that the injured party should be put in the same position that it was in before its property was damaged. *The*

*Baltimore*, 75 U.S. 377, 385 (1869); *Winfield Grain Inc., et al. v. Marquette Trans. Co., LLC*, No. 4:1-CV-2244-TIA, 2014 WL 4749550, at *7 (E.D. Mo. Sept. 24, 2014). Where, as here, the damage results in a "total loss," the measure of damages is generally the fair market value of the property just before the loss. *Pillsbury Co. v. Midland Enters.*, 715 F. Supp. 738, 763 (E.D. La. 1989). When an object is not bought and sold freely, the fair market value is usually the "replacement cost minus depreciation." *Winfield Grain*, 2014 WL 4749550, at *8. This is to prevent an injured party from receiving a windfall by requiring a replacement "for something that was old and depreciated and needed to be replaced" anyway. *Id.* Yet, "it does not matter that a plaintiff chooses to build a different [structure] with identical property; a defendant is still liable for the damages incurred by the destruction of the original [structure]." *BP Exploration & Oil Inc. v. Moran Mid-Atlantic Corp.*, 147 F. Supp. 2d 333, 337 (D. N.J. 2001).

## II. FINDINGS OF FACT

The parties stipulate that Marquette's damages are capped at $5,575,000. Notwithstanding the stipulation, the City put on evidence that it suffered $6,542,195 in damages, including $5,625 for a post-allision inspection; $762,416 for engineering, permitting and design services; $577,200 for retention and sheet pilings; $2,150,000 for demolition, removal, and disposal of the damaged cell; and $3,046,577 for construction and installation of a new protection cell.

### A. <u>Liability</u>

First, Marquette is liable for the physical damage to the protection cell caused by the

allision.  In support of its position that it is not liable for the damage caused by the allision, Marquette argues that the cell would not have overturned had the City maintained the cell's overburden (soil surrounding the cell's base).  As grounds for this, Marquette points to the undisputed evidence that the overburden had severely eroded between the time the cell was constructed and the time of the allision, and that the City never replenished it.  *See* Marcor Platt Report, Ex. 95; Platt Testimony generally; Scott Gros Report, Ex. 93.  It's position is that the cell tipped over and impacted the pier of the bridge because there was very little overburden left to anchor the cell.  It also argues that this condition was caused by the City's failure to maintain the soil and sediment around the cell's base.  In support of this argument, Marquette also presented quite a bit of evidence regarding the velocity of its barges at the time of the allision and the amount of force asserted on the cell at the time the barges impacted it.  *Id.*

Although Marquette's arguments were well-made, they are not persuasive for a couple of reasons.  First, the expert testimony was that the impact of the allision was enough to overturn the cell regardless of the level of overburden.  *See* Justin Kestner Testimony; Platt Testimony at 11:58.  Second, despite Marquette's arguments to the contrary, the cell performed as constructed.  The purpose of the cell was to protect the bridge from being damaged from barges traveling on the river, and that is what it did.  *See* Justin Kestner Testimony at 11:41.  Third, the evidence supports the City's position that, but-for the allision between Marquette's barge and the protection cell, the cell would not have fallen over.

3

B.       Damages

Notwithstanding the City's evidence that it suffered $6,542,195 in damages, it is awarded $4,364,618, which is $3,046,577 for the cost of building and installing a new protection cell; $550,000 for removal of the damaged cell; $762,416 for engineering, permitting and design costs; and $5,625 for the post-allision inspection.

The City is awarded $3,046,577 for the construction of a new cell because this amount is reasonable.  The City put on evidence that it will cost $3,046,577 to replace the damaged cell.  *See* David Hopkins Testimony; Plf.'s Exs. 40, 60, 64.  Marquette put on evidence that this is unreasonable. The City's evidence regarding the replacement cost of the cell is reasonable, notwithstanding the evidence that it did not fully bid out the project.  Further, although courts typically depreciate the value of damages in allision cases, this is very difficult to do in this case because there appears to be no ready market for protection cells and there was no testimony indicating the average useful life span of a cell.  *See Winfield Grain Inc.,* 2014 WL 4749550 at *9 (determining market value by useful life expectancy of damaged structure).  As explained above, the cell served its intended function by preventing Marquette's barges from impacting and damaging the bridge, and the evidence showing that the cell would have continued to serve this function for the foreseeable future is more convincing than the evidence that it would not.  *See* David Hopkins Testimony; Plf.'s Ex. 37; Justin Kestner Testimony.  For these reasons, any depreciation of the cell is negligible and the City is entitled to full replacement cost.  While it is true that the dimensions of the cell differ from those of the damaged cell, the City has the right to be placed in the position it

would be in had the allision not occurred.

Marquette's argument, that the City would have limited the cost of the new cell had it properly bid out the cost of replacing it, is well-taken. The City's response to the argument, however, is more convincing. The City points out that it engaged Massman Construction Company to build the new cell because Massman is a well-respected and trusted local company. *See* David Hopkins Testimony at 4:03. It has completed many large bridge projects in the state of Arkansas and had ongoing projects on the river near the site of the allision. *Id.* The City's evidence is convincing because it shows that City officials had easy and personal access to information that Massman could handle the job and that City officials and engineers were readily able to view the work it does. *Id.*

The City is seeking $2,150,000 for the cost of removing the damaged cell. Plf.'s Ex. 52. Notwithstanding the City's desire for efficiency, as addressed above, this is unreasonable because it is five times the reasonable cost for removing the cell. The City is paying Massman to break up and remove the old cell; however, Andrew McKinney presented convincing evidence that his company is very capable of removing the old cell and that he stands ready to remove it for $550,000. *See* Andrew McKinney Testimony at 8:58.

The City is seeking $762,416 for engineering, permitting and design costs. *See* Plf.'s Ex. 42. These appear to be reasonable and necessary costs and are therefore granted.

The City is seeking $577,200 for retention and sheet pilings. *See* David Hopkins Testimony at 12:14; Plf.'s Exs. 38, 50, 86. The City had the burden of proving that these costs were reasonable and necessary and it has not carried is burden; therefore, its request to

recover these costs is denied.

Finally, the City is seeking $5,626 for the cost of the post allision inspection. *See* Plf.'s Exs. 29 and 86. This is reasonable and is therefore granted.

III. CONCLUSION

For these reasons, Marquette is ordered to pay the City of Little Rock damages in the amount of $4,364,618, which includes $3,046,577 for the cost of replacing the damaged cell; $550,000 for the cost of removing the damaged cell; $762,416 for engineering, permitting and design costs; and $5,625 for the post allision inspection.

IT IS SO ORDERED this 16th day of July, 2026.

_____
UNITED STATES DISTRICT JUDGE